No. 66,513

CHARLETT M. HARDING, Individually and as Executrix of the ESTATE OF JERRY R. HARDING, DECEASED, *Appellee,* v. K.C. WALL PRODUCTS, INCORPORATED, A Missouri Corporation, *Appellant.*

(831 P.2d 958)

Opinion filed April 10, 1992.

*Daniel L. Fowler,* of Watson, Ess, Marshall & Enggas, of Kansas City, Missouri, argued the cause, and *Paul R. Lamoree,* of the same firm, and *Jason R. Brown,* of the same firm, of Olathe, were with him on the briefs for appellant.

*Jerry R. Palmer,* of Palmer & Marquardt, of Topeka, argued the cause and was on the brief for appellee.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, was on the briefs for *amicus curiae* Kansas Association of Defense Counsel. .

*Randall K. Rathbun,* of Depew Gillen & Rathbun, of Wichita, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

HERD, J.: Charlett M. Harding, individually and as an executrix of her husband's estate, brought this tort action against K.C. Wall Products, Inc. (K.C. Wall). K.C. Wall motioned for summary judgment, arguing Harding's claim was barred by the statute of limitations, K.S.A. 1991 Supp. 60-513. The district court denied K.C. Wall's motion and K.C. Wall brought this interlocutory appeal.

The parties stipulated to the following facts. From approximately 1963 until his death Jerry Harding was a painting contractor in Wichita, Kansas. Harding Painting Contractors purchased asbestos-containing drywall products from K.C. Wall and others from about 1972 until no later than January 1, 1977.

K.C. Wall Products, Inc., is a Missouri corporation with its principal place of business located in Kansas. It is the successor by merger to a company formerly known as Ruco, Inc. K.C. Wall's predecessor did not begin to manufacture or sell any asbestos-containing products until 1971, and did not manufacture or sell any asbestos-containing products after April 1976 at the latest. Therefore, Jerry Harding's last exposure to any asbestos-

containing products manufactured, sold, or distributed by K.C. Wall or its predecessor occurred prior to January 1, 1977.

In March 1988 Jerry Harding was diagnosed by his treating physicians with malignant pleural mesothelioma. Harding died on October 26, 1988, as a result of this illness.

Charlett Harding, Jerry's wife, filed suit individually and as executrix of Jerry's estate against K.C. Wall on September 5, 1990. The petition alleged negligence and strict liability due to design defect and failure to warn.

On February 1, 1991, K.C. Wall moved for summary judgment, arguing the cause of action had been filed over 10 years after any possible wrongful act by K.C. Wall and, therefore, was barred by the statute of limitations, K.S.A. 1991 Supp. 60-513. K.C. Wall further contended the 1990 amendment to K.S.A. 60-3303 designated as H.B. 2689, which Charlett claimed revived her claim, is unconstitutional. The district court denied K.C. Wall's summary judgment motion, finding H.B. 2689 was constitutional, and revived Charlett's cause of action. The district court also certified the issue for an interlocutory appeal pursuant to K.S.A. 1991 Supp. 60-2102(b).

K.C. Wall's request for an interlocutory appeal was granted by the Court of Appeals on May 28, 1991. We transferred the action to this court on June 20, 1991.

The issue for our consideration is whether Charlett's cause of action is barred by the statutes of limitations. For a better understanding of the issues, let us examine the pertinent statutes of limitations, the most recent amendments thereto, and our opinions construing those statutes.

The general statute of limitations for tort actions is K.S.A. 1991 Supp. 60-513. K.S.A. 1991 Supp. 60-513(a) provides for a two-year limitation and K.S.A. 1991 Supp. 60-513(b) and (c) explain how to determine when a cause of action accrues. Prior to the 1987 amendment to K.S.A. 60-513, subsection (b) stated:

"(b) Except as provided in subsection (c) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no

event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

We construed K.S.A. 60-513 in *Ruthrauff, Administratrix v. Kensinger,* 214 Kan. 185, 519 P.2d 661 (1974). *Ruthrauff* arose from a gas explosion and fire which destroyed a house and caused the death of one of the homeowners 12 days later. Within two years of the explosion but over 10 years after the house was built, the administratrix of the decedent's estate filed a suit against the building and plumbing contractors. The trial court granted the defendants' motion for summary judgment based upon its interpretation of K.S.A. 60-513(b) that " '[n]o cause of action can arise if more than ten years have elapsed since the alleged wrongful act.' " 214 Kan. at 187. We reversed, finding:

"Under K.S.A. 60-510 this primary 2 year period [in 60-513(a)] is not to commence until each cause of action shall accrue, *i.e.*, when substantial injury results. The 10 year provision is secondary and speaks to this primary period when it states 'but in *no event shall the period be extended* more than ten (10) years beyond the time of the act giving rise to the cause of action.' . . . [The 10-year provision] is merely a limitation on the extension of the 2 year period when substantial injury is not immediately ascertainable. . . . [The 10-year provision] does not affect or limit the primary 2 year period for bringing an action where the fact of substantial injury is immediately apparent as in the case of an explosion and resulting fire." 214 Kan. at 191.

In addition, *Ruthrauff* has been interpreted to mean "[t]he ten-year cap contained in K.S.A. 60-513(b) is applicable only where the fact of injury is not reasonably ascertainable until some time after substantial injury occurs." *Kinell v. N.W. Dible Co.,* 240 Kan. 439, 443, 731 P.2d 245 (1987).

The next case of major importance to understanding K.S.A. 60-513 prior to the 1987 amendment is *Tomlinson v. Celotex Corp.,* 244 Kan. 474, 770 P.2d 825 (1989). *Tomlinson* came before this court as a certified question from the United States District Court. The certified question presented the following question: "Does the ten-year limitation of K.S.A. 60-513(b) apply to claims involving latent diseases and, if so, is it constitutional as applied to this plaintiff?" 244 Kan. 474. We held the 10-year limitation of K.S.A. 60-513(b) does apply to latent diseases and that such limitation is constitutional. Tomlinson claimed his personal injuries were caused by the exposure to asbestos which was man-

ufactured, sold, or distributed by the defendants. Tomlinson's last exposure to asbestos was in 1971. His injuries, however, were not ascertained until September 1986.

Tomlinson filed his suit within 2 years of discovering his sub-stantial injury but more than 10 years after his last exposure to asbestos. Although we stated "the rule announced in *Ruthrauff* remains applicable to the present case", we ultimately held "the ten-year limitation contained in subsection (b) began, at the latest, upon the last exposure of the plaintiff to asbestos produced, sold, and distributed by the defendants in 1971." 244 Kan. at 477, 481.

Recently this court overruled *Tomlinson* in *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 318, 820 P.2d 390 (1991). In *Gilger* we again looked at K.S.A. 60-513 prior to the 1987 amendment. We ratified the rationale stated in *Ruthrauff* and other cases that "the statute of limitations under K.S.A. 60-513(b) is not triggered until substantial injury occurs or is reasonably ascertainable, re-gardless of the antiquity of the wrongful act which caused the injury." 249 Kan. at 316. Moreover, if injury is suspected but the cause of the injury is not ascertainable until later, K.S.A. 60-513 bars an action thereon unless the facts of injury are ascer-tained and action commenced within 10 years of the substantial injury. 249 Kan. 307, Syl. ¶ 5. If the evidence of when the injury and its cause should have been known to plaintiff is controverted, the question of when plaintiff reasonably ascertained his or her substantial injury was caused by the defendant is a question of fact to be determined by a jury. 249 Kan. 307, Syl. ¶ 9.

In response to a suggestion made in *Ruthrauff* and in an at-tempt to make 10 years the absolute limit for filing actions, the legislature amended K.S.A. 60-513(b) in 1987. The amended sub-section provides in pertinent part:

"(b) Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.*" (Emphasis added.)

The *Ruthrauff* rule, however, continued in effect for two years following the date of the amendment because of section (d):

"(d) The provisions of this section as it was constituted prior to July 1, 1987, shall continue in force and effect for a period of two years from that date with respect to any act giving rise to a cause of action occurring prior to that date." K.S.A. 1991 Supp. 60-513.

In 1990, the legislature, in disagreement with our decision in *Tomlinson,* amended K.S.A. 60-3303 of the Kansas Product Liability Act. The amended statute provides in pertinent part:

"(a) (1) Except as provided in paragraph (2) of subsection (a) of this section, a product seller shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's 'useful safe life' had expired. 'Useful safe life' begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner. For the purposes of this section, 'time of delivery' means the time of delivery of a product to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold.

. . . .

"(b) (1) In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.

. . . .

"[2](D) The ten-year period of repose established in paragraph (1) of this subsection shall not apply if the harm was caused by prolonged exposure to a defective product, or if the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery, or if the harm caused within 10 years after the time of delivery, did not manifest itself until after that time.

"(c) Except as provided in subsections (d) and (e), nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513, and amendments thereto.

"(d) (1) In a product liability claim against the product seller, the ten-year limitation, as defined in K.S.A. 60-513, and amendments thereto, shall not apply to the time to discover a disease which is latent caused by exposure to a harmful material, in which event the action shall be deemed to have accrued when the disease and such disease's cause have been made known to the person or at the point the person should have been aware of the disease and such disease's cause.

"(2) The term 'harmful material' means any chemical substances commonly known as asbestos . . . .

"(e) Upon the effective date of this act through July 1, 1991, the provisions of this subsection *shall revive* such causes of action for latent diseases caused by exposure to a harmful material for: (1) Any person whose cause of action had accrued, as defined in subsection (d) on or after March 3, 1987 [the date of the *Tomlinson* decision]; or (2) any person who had an action pending in any court on March 3, 1989, and because of the judicial interpretation of the ten-year limitation contained in subsection (b) of K.S.A. 60-513, and amendments thereto, as applied to latent disease caused by exposure to a harmful material the: (A) Action was dismissed; (B) dismissal of the action was affirmed; or (C) action was subject to dismissal. The intent of this subsection is to revive causes of action for latent diseases caused by exposure to a harmful material which were barred by interpretation of K.S.A. 60-513, and amendments thereto, in effect prior to this enactment." (Emphasis added.) K.S.A. 1991 Supp. 60-3303.

As a preliminary matter, we determine the statute of limitations in effect at the time the action was filed applies. It is a·well-settled rule of law that "statutes complete in themselves, relating to a specific thing, take precedence over general statutes." *Szoboszlay v. Glessner*, 233 Kan. 475, 479, 664 P.2d 1327 (1983). Because K.S.A. 1991 Supp. 60-3303 provides the limitation for bringing an action arising out of a latent disease caused by the harmful material asbestos, it is the applicable statute.

The first issue for resolution is whether K.S.A. 1991 Supp. 60-3303 is constitutional. It is axiomatic that statutes are presumed to be constitutional. We have stated it is the duty of the court when considering the constitutionality of a statute to resolve all doubts in favor of validity.

"Before a statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done." *Bair v. Peck*, 248 Kan. 824, Syl. ¶ 1, 811 P.2d 1176 (1991).

K.C. Wall contends 60-3303 is unconstitutional as amended in 1990 because subsection (e) revives actions prohibited by K.S.A. 1991 Supp. 60-513, thereby .denying potential defendants of a vested defense. K.C. Wall makes three arguments to support its contention; we address each.

First, K.C. Wall claims the legislature's retroactive application of the amended statute violates K.C. Wall's due process rights under either the Kansas or United States Constitutions. K.C. Wall contends Kansas' statutes· of limitations are statutes of repose

which create a vested right in the defense once the statutory limitation has run. Furthermore, K.C. Wall argues any retroactive law is unconstitutional to the extent it would destroy existing, vested rights constituting a taking of property without due process of law.

We have never specifically recognized a difference between a statute of limitations and a statute of repose. The United States District Court of Kansas, however, did make such a distinction in *Menne v. Celotex Corp.*, 722 F. Supp. 662 (D. Kan. 1989). That case was similar to the one currently under consideration in that the original plaintiff suffered from malignant mesothelioma and contended his injuries were caused by exposure to asbestos products. The issue before the court was a conflict of laws question. The parties had stipulated the case should be tried according to the State of Nebraska's substantive law and the procedural laws of Kansas applied. The court then had to determine whether K.S.A. 60-513(b), as construed by *Tomlinson*, was substantive or procedural. The court stated that

"statutes of limitation 'are generally seen as running from the time of injury, or discovery of the injury in cases where that is difficult to detect. They serve to limit the time within which an action may be commenced after the cause of action has accrued. . . .'

". . . The main purpose of such statutes is the prevention of stale claims, serving as 'instruments of public policy and of court management, [which] do not confer upon defendants any right to be free from liability, although this may be their effect.' " 722 F. Supp. at 665-66.

It contrasted statutes of repose, stating they

" 'create time limitations which are not measured from the date of injury. These time limitations often run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant.' . . .

. . . .

". . . Because statutes of repose ignore the date of the injury or discovery of injury and generally lack tolling provisions, they are deemed to 'acquire a substantive nature, barring rights of action even before injury has occurred if the injury occurs subsequent to the prescribed time period.' " 722 F. Supp. at 665-66.

See *Goad v. Celotex Corp.*, 831 F.2d 508 (4th Cir. 1987), *cert. denied* 487 U.S. 1218 (1988); *Wayne v. Tennessee Valley Authority*, 730 F.2d 392 (5th Cir. 1984), *cert. denied* 469 U.S. 1159

(1985); *Trustees of Rowan Technical College v. J. Hyatt Hammond Associates, Inc.*, 313 N.C. 230, 328 S.E.2d 274 (1985).

Applying these principles, the court found the 10-year provision of K.S.A. 60-513(b) "does not serve to limit stale claims as such. Rather, it operates as a general grant of immunity against claims arising more than ten years after the defendant's actions." 722 F. Supp. at 666. The court, therefore, held the 10-year provision of K.S.A. 60-513(b) is a statute of repose and, thus, a substantive rule of law.

Our failure to make a distinction between statutes of limitations and statutes of repose has led us to treat statutes of limitations as statutes of repose. See *Schulte v. Westborough, Inc.*, 163 Kan. 111, 115, 180 P.2d 278 (1947). For example, in *Morton v. Sharkey*, 1 Kan. *535 (1860), the territorial supreme court addressed the validity of a new six-year limitation period for actions on commercial notes. The prior applicable statute of limitations was a three-year limitation on all contract actions. The court stated: "The rule is, that the limitation may be extended, where it has not already expired. A [cause of action] which is already barred by existing laws can not be revived by a new one." 1 Kan. at *538.

Later this court was faced with determining the effect of changes in a statute of limitations in an ejectment case. *Bowman, et al., v. Cockrill*, 6 Kan. 311 (1870). In that case, where the title to real property turned upon the validity of a tax deed, we stated:

"[Statutes of limitations] can never operate where no cause of action exists; and can never operate except when rights have already been disturbed. The effect of the operation of the statute of limitations is not to create a cause of action; its effect is to take away a cause of action already created by acts of one or both of the parties. The effect is not to disturb rights, nor to transfer property; but to leave rights and property just where the parties themselves have voluntarily chosen to leave them during the running of the statute. The statutes of limitations simply say this to the party injured: 'You have voluntarily allowed your property (real or personal as the case may be,) or the money you claim as compensation for some injury done to you, (on either contract or tort,) to remain in the possession of your adversary during a certain period without any effort to recover it, and now we will allow it to remain in the same place and in the same condition forever.'

. . . .

". . . After a cause of action is once barred by a statute of limitations it is not in the power of the legislature to revive it by subsequent legislation." 6 Kan. at 338-40.

More recently, we held that when defendants have a vested right in the defense provided by the statute of limitations,

"[t]here is no distinction between a vested right of action and a vested right of defense. Accordingly, the general rule is that a vested right to an existing defense is protected in like manner as a right of action, with the exception only of those defenses which are based on informalities not affecting substantial rights." *Jackson v. American Best Freight System, Inc.*, 238 Kan. 322, 325, 709 P.2d 983 (1985).

Our failure to make a distinction between limitation and repose has caused K.C. Wall to claim its right to the defense of the statute of limitations vested pursuant to K.S.A. 1991 Supp. 60-513(b) not later than late 1986 because K.C. Wall's predecessor stopped manufacturing and selling any asbestos-containing products in April 1976. Thus, K.C. Wall argues the 1990 amendment to K.S.A. 60-3303 with its retroactive provisions constitutes a taking of property without due process.

Judge Kelly of the United States District Court of Kansas was faced with this issue in *Waller v. Pittsburgh Corning Corp.*, 742 F. Supp. 581 (D. Kan. 1990), *aff'd* 946 F.2d 1514 (10th Cir. 1991). There, the plaintiff claimed his personal injuries were due to exposure to asbestos products manufactured by the defendants. The plaintiff was exposed to asbestos-containing products between 1960 and 1976 and filed his suit more than 10 years after 1976. The court was asked to determine whether the plaintiff's cause of action was barred under K.S.A. 60-513(b).

The court considered whether the 1990 amendment to K.S.A. 60-3303 revived the suit. The court noted the majority of states have found revivor statutes divest the defendant of a vested right to a limitations defense and violate due process. "These courts have taken the position that the passing of the limitations period creates a vested right of defense in the defendant, which cannot be removed by subsequent legislative action expanding the limitations period." 742 F. Supp. at 583. Several states have not held such legislation offends due process. In *Waller*, the court found Kansas follows the majority view. Thus, the court held the 1990 amendment to K.S.A. 60-3303 was unconstitutional and in-

valid. It should be noted that *Waller* was decided while *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989), was in effect, which made K.S.A. 1991 Supp. 60-3303(e) applicable to both the 10-year statute of repose and the 2-year statute of limitations. We overruled *Tomlinson* in *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991), in 1991. This left the retroactive provision of 60-3303 applicable only to the two-year statute of limitations since the action did not accrue until the latent disease was diagnosed.

Harding responded to K.C. Wall's argument by citing *Unified School Dist. No. 500 v. U.S. Gypsum Co.*, 719 F. Supp. 1003 (D. Kan. 1989). There, a school district brought suit against asbestos manufacturers for having installed asbestos-containing products in the school district's buildings no later than 1972. The school district did not file its suit until 1988. Despite the fact statutes of limitations do not run against the state, including school districts, unless specifically provided by the statute, the defendants claimed the action was barred. Defendants contended 60-513(b) was a statute of repose and, therefore, their defense of the running of the 10-year provision was a vested right.

Judge O'Connor was "unconvinced that Kansas distinguishes between statutes of repose and statutes of limitation." 719 F. Supp. at 1005. The federal court relied upon our decision in *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 631 P.2d 222 (1981), in which we found the four-year limit of K.S.A. 60-513(c) to be constitutional. " 'A statute of limitation affects the remedy only [and] does not impair rights and obligations.' " *Stephens*, 230 Kan. at 128-29. Judge O'Connor, therefore, held the 10-year provision of K.S.A. 60-513(b) was a statute of limitations.

It is important to bear in mind the change in K.S.A. 60-513(c) which was at issue in *Stephens* was an amendment changing the limitation for actions arising out of services rendered by a health care provider from 10 years to 4 years. In *Stephens*, the issue was whether the statute violated the plaintiff's right to a remedy under equal protection, not the defendant's right to a defense.

Harding also relies on cases from other jurisdictions which hold similar statutes reviving causes of actions did not violate due process. In *Hymowitz v. Lilly & Co.*, 73 N.Y.2d 487, 539 N.E.2d 1069, *cert. denied* 493 U.S. 944 (1989), the plaintiffs alleged

injuries caused by diethylstilbestrol (DES) and brought suits against various DES manufacturers. The New York legislature had passed a statute which revived, for one year, actions for damages caused by latent effects of DES, asbestos, and other products.

The Court of Appeals of New York stated:

"The Federal Due Process Clause provides very little barrier to a State Legislature's revival of time-barred actions (see, Chase Sec. Corp. v. Donaldson, 325 U.S. 304). In Chase, the United Stated Supreme Court upheld the revival of a time-barred action, stating that Statutes of Limitation 'represent a public policy about the privilege to litigate . . . the history of pleas of limitation show them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.' . . . '[t]he Legislature may constitutionally revive a personal cause of action where the circumstances are exceptional and are such as to satisfy the court that serious injustice would result to plaintiffs not guilty of any fault if the intention of the Legislature were not effectuated.' " 73 N.Y.2d at 514.

Harding asks us to adopt the Hymowitz standard and find that the legislature may constitutionally revive a personal cause of action in exceptional circumstances in order to avoid injustice.

K.C. Wall argues the legislature has no authority to enact retroactive legislation, citing Jackson v. American Best Freight System, Inc., 238 Kan. at 324-25, where we stated:

"A statute operates prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively. . . .

. . . .

"While retrospective operation of procedural statutes has been allowed generally, where a vested right of defense exists prior to the effective date of the procedural statute, it would not be proper to allow the retrospective application of 60-203(b) [the service of process provision]."

K.C. Wall cites Jackson to support its claim that the legislature may enact retroactive legislation only so long as it does not violate the state or federal constitutions and that K.S.A. 1991 Supp. 60-3303 violates both constitutions. Harding counters by claiming the legislature's use of language in the 1990 amendment clearly expresses its intent to apply the amendment retroactively and the retroactive application is proper regardless of constitutional considerations, so long as she did not sleep on her rights.

Let us examine whether K.S.A. 1991 Supp. 60-3303(e) violates the United States Constitution. The Fourteenth Amendment pro-

vides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." As previously noted in our discussion of *Hymowitz*, the United States Supreme Court decided this issue in *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 89 L. Ed. 1628, 65 S. Ct. 1137, *reh. denied* 325 U.S. 896 (1945). *Chase* involved a retroactive Minnesota statute lifting the bar of a statute of limitations on an action to recover the purchase price of fraudulently sold securities. The defendant asserted the defense of taking of property without due process under the Fourteenth Amendment.

The Court stated "[s]tatutes of limitation find their justification in necessity and convenience rather than in logic" representing expedients rather than principles. 325 U.S. at 314. The Court found they are for the practical purpose of sparing the courts from litigation of stale claims and people from being put to the defense of claims after memories have faded and witnesses have disappeared. The Court further stated statutes of limitations are arbitrary, do not discriminate between just and unjust claims, and are creatures of the legislature and not the judiciary, expressing public policy on the right to litigate. The shelter afforded by the running of statutes of limitations does not amount to a fundamental right and the defense is subject to a large degree of legislative control. Justice Jackson, speaking for the Court, asserted:

"The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. . . . [I]t cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment." 325 U.S. at 315-16.

Thus, we see the retroactive provision of K.S.A. 1991 Supp. 60-3303(e) does not violate the Fourteenth Amendment to the United States Constitution. The provision makes no distinction between statutes of limitations and statutes of repose.

We now turn to the Kansas Constitution Bill of Rights, § 18: "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law." As previously pointed out, we have recognized a defendant has a vested right to a defense after the statute of limitations has run, except where no substantial rights are affected. See *Jackson v. American Freight*

*System, Inc.,* 238 Kan. at 325. We have so held without distinguishing statutes of limitations from statutes of repose. Our failure to make this distinction makes it difficult to separate procedural law from substantive law. This is important to this case because the courts have historically recognized that legislatures may by express provision make procedural law retroactive because no property rights are involved. A different rule applies, however, to substantive laws. They affect vested rights and are not subject to retroactive legislation which would constitute the taking of property without due process.

Even though the United States Supreme Court makes no distinction between statutes of limitations and statutes of repose, and we have not clearly expressed the distinction in our cases, we consider it important to explain the difference between the two theories. A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. It is substantive. Thus, Kansas constitutional protection applies only to statutes of repose because they pertain to substantive rights.

The statute of limitations rule expressed in *Schulte v. Westborough, Inc.,* 163 Kan. 111; *Bowman, et al. v. Cockrill,* 6 Kan. 311; and *Morton v. Sharkey,* 1 Kan. \*535; remained the law of Kansas until 1951, when this court in *Kitchener v. Williams,* 171 Kan. 540, 236 P.2d 64 (1951), first held the statute of limitations in tort actions does not accrue until the date substantial injury is ascertained, as contrasted to the date the negligent act occurred. This principle was codified in K.S.A. 60-513 (Corrick) in 1963 and represents a change of public policy giving a less harsh application of the statute of limitations. K.S.A. 60-513(b) and (c) followed, creating statutes of repose for tort and medical malpractice actions, respectively. We construed these statutes in *Gilger v. Lee Constr., Inc.,* 249 Kan. 307, 820 P.2d 390 (1991); *Stephens v. Snyder Clinic,* 230 Kan. 115; and, *Ruthrauff, Administratrix v. Kensinger,* 214 Kan. 185, 519 P.2d 661 (1974). The legislature clearly recognized a distinction between statutes

of limitations and statutes of repose. We adhere to the legislature's public policymaking authority and, therefore, we recognize the distinction between the two theories as previously expressed.

With our recognition of the distinction between statutes of repose and statutes of limitations, we modify the rule in *Morton v. Sharkey, Bowman et al. v. Cockrill,* and other cases which prohibit the legislature from reviving causes of action barred by a statute of limitations. The legislature has the power to revive actions barred by a statute of limitations if it specifically expresses its intent to do so through retroactive application of a new law. The legislature *cannot* revive a cause of action barred by a statute of repose, as such action would constitute the taking of property without due process.

This rule does not apply to causes of action affecting the title to real estate or personal property because such actions involve substantive or vested rights and, thus, cannot be revived regardless of any distinction between statutes of limitations and statutes of repose. The statutes we are construing here do not affect such rights.

Let us now examine the applicable Kansas statutes. The standard two-year limitation of actions found in K.S.A. 1991 Supp. 60-513(a) is a statute of limitations. It fits the definition completely. However, the 10-year provision in K.S.A. 1991 Supp. 60-513(b), "but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action," is a statute of repose. It bars the cause of action after the 10-year period even though the action may not have yet accrued.

In this case, K.C. Wall argues K.S.A. 1991 Supp. 60-3303(e) applies to both the 2-year and the 10-year provisions found in K.S.A. 1991 Supp. 60-513. That argument ignores the existence of K.S.A. 1991 Supp. 60-3303(b)(2)(D), enacted in 1981, which specifically exempts the type of injury alleged in the petition from application of the 10-year period of repose.

Prior to the 1990 amendment, K.S.A. 60-3303(c) provided: "Nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513."

It is sometimes claimed that subsection (c) nullifies the exemption provided in (b)(2)(D). See Westerbeke, *Some Observa-*

tions on the Kansas Product Liability Act (Part 1), 53 J.K.B.A. 296, 308 (1984). We do not agree. At the time K.S.A. 60-3303 was enacted in 1981, K.S.A. 60-513 had been interpreted by *Ruthrauff, Administrator v. Kensinger*, 214 Kan. 185. *Ruthrauff* held the statute of repose was not triggered until substantial injury occurred but was not reasonably ascertainable. Thus, when K.S.A. 60-3303 was enacted there was no conflict between it and K.S.A. 60-513. Moreover, because 60-3303(b)(2)(D) already exempted from the 10-year repose provision causes of action involving harm "caused by prolonged exposure to a defective product . . . exist[ing] at the time of delivery [that] was not discoverable by a reasonably prudent person," the revival provision of 60-3303, as amended in 1990, did not affect the existing exemption.

Hence, K.S.A. 1991 Supp. 60-3303(e) applies retroactively only to the two-year statute of limitations K.S.A. 1991 Supp. 60-513(a). As we previously noted, a defendant has no vested right in a statute of limitations. It is an expression of legislative public policy, is procedural, and may be applied retroactively when the legislature expressly makes it so. We hold K.S.A. 1991 Supp. 60-3303(e) is not in violation of either the Kansas or United States Constitutions.

To be entitled to the benefits of such legislation, however, K.S.A. 1991 Supp. 60-3303(e) requires that the parties claiming the right to revivor must not have slept on their rights. To make such a determination, we must review the applicable chronology.

On March 3, 1989, we filed *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989), where we held the 10-year repose provision of K.S.A. 60-513(b) was triggered by the victim's last exposure to the disease-producing substance. This decision eliminated Harding's remedy one year before the two-year statute of limitations found in K.S.A. 60-513(a) ran. *Tomlinson* remained the law until the legislature enacted K.S.A. 1991 Supp. 60-3303(e) on May 24, 1990. Harding filed suit September 5, 1990, under authority of that statute. We did not overrule *Tomlinson* in *Gilger v. Lee Construction* until October 1991. We hold Harding acted with due diligence under the facts of this case. This action was not filed in violation of the statute of limitations.

K.C. Wall's last challenge to the constitutionality of K.S.A. 1991 Supp. 60-3303(e) is that H.B. 2689 violates Article 2, section 16 of the Kansas Constitution. Article 2, § 16 provides:

"**Subject and title of bills; amendment or revival of statutes.** No bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes. The subject of each bill shall be expressed in its title. *No law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed.* The provisions of this section shall be liberally construed to effectuate the acts of the legislature." (Emphasis added.)

K.C. Wall contends H.B. 2689 amended 60-513 as amended in 1987 and that amendment was not in compliance with the provision of Kansas Const. art. 2, § 16 requiring the new act to contain the entire law amended and the repeal of the old law. K.C. Wall further claims that placing the statute of limitations for latent diseases in the Kansas Product Liability Act creates confusion, which Art. 2, § 16 is designed to avoid. For support, K.C. Wall points out that Judge Kelly mistakenly believed H.B. 2689 amended K.S.A. 60-513 when he considered *Waller v. Pittsburgh Corning Corp.*, 742 F. Supp. 581 (D. Kan. 1990).

Judge Kelly issued the *Waller* opinion on July 16, 1990, before the 1990 Kansas session laws were available to him. The session laws clearly state H.B. 2689 is "[a]n Act concerning civil procedure; relating to limitation of actions; *amending K.S.A. 60-3303 and repealing the existing section.*" (Emphasis added.) L. 1990, ch. 211.

The standard for our review of this issue was discussed in *State v. Reves*, 233 Kan. 972, Syl. ¶ 1, 666 P.2d 1190 (1983).

"Art. 2, § 16, of the Kansas Constitution should not be construed narrowly or technically to invalidate proper and needful legislation, and where the subject of the legislation is germane to other provisions, the act is not objectionable as containing more than one subject or as containing matter not expressed in the title. This provision is violated only where an act embraces two or more dissimilar and discordant subjects that cannot reasonably be considered as having any legitimate connection with or relationship to each other."

There are numerous statutes of limitations and as a general rule they appear in Article 5 of Chapter 60. K.S.A. 60-501 provides: "The provisions of this article govern the limitation of time

for commencing civil actions, *except where a different limitation is specifically provided by statute.*" (Emphasis added.)

We find it was appropriate to place the provision of H.B. 2689 governing the time in which a products liability cause of action arising from a latent disease caused by specific harmful materials in a statute which is a part of the Kansas Products Liability Act. Therefore, we hold H.B. 2689 does not violate Art. 2, § 16 of the Kansas Constitution.

The judgment of the district court is affirmed, and this case is remanded for further proceedings consistent with this opinion.